UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                              :
HOMESCHOOL BUYERS CLUB, INC.,      :
                                              :
                      Plaintiff,     :
                                              :          19-CV-6046 (VSB)
            - against -           :
                                              :          **OPINION & ORDER**
                                              :
BRAVE WRITER, LLC,                        :
                                              :
                      Defendant.  :
                                              :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/11/2020

Appearances:

Craig S. Tarasoff
Jared B. Foley
David S. Douglas
Gallet Dreyer & Berkey, LLP
New York, NY
*Counsel for Plaintiff*

Christine M. Haaker
Thompson Hine LLP
Columbus, OH

Emily Joy Mathieu
Thompson Hine LLP
New York, NY

Sean P. McCormick
Thompson Hine LLP
Miamisburg, OH
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Homeschool Buyers Club, Inc. filed this action on June 28, 2019, (Doc. 1), alleging ten causes of action arising from Defendant Brave Writer, LLC's alleged misappropriation of Plaintiff's proprietary customer information, and further filed a motion for a

preliminary injunction on August 9, 2019, (Doc. 12). Defendant Brave Writer, LLC moved to dismiss Plaintiff's complaint on August 12, 2019, (Doc. 16), and opposed Plaintiff's motion for a preliminary injunction on September 17, 2019, (Doc. 30). Because this court cannot exercise personal jurisdiction over Brave Writer, LLC, Defendant's motion to dismiss is GRANTED, Plaintiff's motion for a preliminary injunction is DENIED, and this case is dismissed without prejudice.

## I. **Factual Background**[1]

Plaintiff Homeschool Buyers Club, Inc. ("Plaintiff") is a corporation established under the laws of the state of California. (Compl. ¶ 5.)[2] Plaintiff is an online seller of homeschool curricula and services to homeschooling families, and operates as a cooperative that pools the purchasing power of its customer members in order to negotiate discounted prices from major educational publishers and homeschooling product vendors. (*Id.* ¶ 7.) Plaintiff currently has approximately 250,000 customer members located throughout the United States and abroad. (*Id.*) Plaintiff alleges that its customer members are the "lifeblood of its business," and "[a]bsent such customer members, [Plaintiff] would not be able to negotiate substantial discounts . . . and would cease to be a viable business operation." (*Id.* ¶ 8.) Accordingly, Plaintiff takes significant steps to protect its membership information, including by keeping confidential the identities of

---

[1] This factual background is derived from the allegations in Plaintiff's complaint. My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings in this Opinion & Order. In addition, in deciding whether there is subject matter and personal jurisdiction, I rely on the affidavits and exhibits submitted by the parties in connection with Defendant's motion to dismiss and Plaintiff's motion for a preliminary injunction. *See Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015) (stating that when deciding a motion under Rule 12(b)(1), a court may rely on evidence outside the pleadings); *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (a court may rely on pleadings and affidavits at the pleadings stage to determine if plaintiff has made a prima facie showing of personal jurisdiction). With the Court's leave, many of the documents filed in this action were filed under seal and docketed with partial redactions. (*See* Docs. 19, 29, 40, 48.) Accordingly, this opinion is partially redacted consistent with the parties' requests.

[2] "Compl." refers to Plaintiff's complaint, filed June 28, 2019. (Doc. 1.)

its members and their contact information, which Plaintiff asserts cannot be easily discerned through readily available public information. (*Id.*) Plaintiff alleges that it assures its members that it will not use their contact information "for anything other than bringing them the best homeschool curriculum values." (*Id.* ¶ 9.)

Defendant Brave Writer, LLC ("Defendant") is a limited liability company established under the laws of the state of Ohio with its principal place of business in Ohio. (*Id.* ¶ 6.) Julie Sweeney—also known as Julie Bogart, (Sweeney Decl. ¶ 1)[3]—is a citizen and resident of the State of Ohio, and is the sole member of Defendant. (Compl. ¶ 6.) Defendant is a provider of educational materials and courses designed to improve children's writing skills. (*Id.* ¶ 10.) Since 2010, Defendant has been a vendor of products for Plaintiff, and Plaintiff has offered Defendant's products to its customers on its website. (*Id.*)

On March ▌ 2017, Plaintiff and Defendant entered into a business agreement over email. (Sweeney Decl. Ex. C; Compl. ¶ 11.) The agreement states that Plaintiff  (Sweeney Decl. Ex. C, at 1; Compl. ¶ 12.) The agreement states that Plaintiff ▮▮▮ (Sweeney Decl. Ex. C, at 2; Compl. ¶ 13.) The agreement ▮▮▮ (Sweeney Decl. Ex. C, at 2; Compl. ¶ 14.) The agreement also includes ▮▮▮

---

[3] "Sweeney Decl." refers to the Declaration of Julie Sweeney in support of Defendant's motion to dismiss, filed August 13, 2019. (Doc. 21.)

███████████████████████████████████████████████████

███████████████████████████████████████████████████

(Sweeney Decl. Ex. C, at 3; Compl. ¶ 15.) ██████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████ (Sweeney Decl. Ex. C, at 3; Compl.

¶ 16.) The agreement also states that ████████████████████████████████

████████████████████████████ (Sweeney Decl. Ex. C, at 3; Compl. ¶ 17.)

After execution of the agreement, the parties continued with their relationship in accordance with the agreement and their prior course of dealing, to both parties' profit. (Compl. ¶¶ 18–19.) For example, in 2018, purchases of Defendant's products by Plaintiff's members generated approximately $200,000 of gross sales and approximately $90,000 of profit for Defendant. (*Id.* ¶ 19.) However, by letter dated May 21, 2019, Defendant purported to terminate Plaintiff's rights to distribute, sell, or promote Defendant's products effective as of May 28, 2019. (*Id.* ¶ 20.) Plaintiff alleges that following receipt of this letter, Plaintiff attempted to preserve its rights and ascertain why Defendant wished to terminate the parties' relationship. (*Id.* ¶ 22.) Plaintiff communicated with Defendant's counsel, and alleges that "[d]uring the course of such communications, it became apparent that the motivation for [Defendant's] actions was its intention to compete with [Plaintiff], including through unlawful utilization of [Plaintiff's] confidential and proprietary customer information." (*Id.* ¶¶ 22–23.) Plaintiff alleges that during such communications, Plaintiff demanded that Defendant remove all information concerning Plaintiff's members from its servers, which Defendants refused to do. (*Id.* ¶ 24–25.) Plaintiff alleges that Defendant "admitted that it intended to utilize [Plaintiff's] proprietary customer information as a means to circumvent the terms of the [parties'] Agreement and directly compete

4

with [Plaintiff], indicating that it viewed [Plaintiff's] customer information as a means to 'grow [Defendant's] own audience.'" (*Id.* ¶ 25.)

Plaintiff contends that Defendant now has information pertaining to over ten thousand of Plaintiff's customer members, which Defendant is misappropriating for unlawful purposes in violation of Plaintiff's rights, causing Plaintiff harm. (*Id.* ¶¶ 26–30.)

## II. **Procedural History**

Plaintiff filed the complaint in this action on June 28, 2019. (Doc. 1.) Plaintiff's complaint alleges ten causes of action, including (i) violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831, *et seq.*; (ii) unfair competition; (iii) misappropriation of confidential information; (iv) theft of corporate opportunities; (v) tortious interference with actual and prospective business relationships; (vi) conversion; (vii) unjust enrichment, money had and received, and constructive trust; (viii) breach of contract; (ix) breach of duty of good faith and fair dealing; and (x) injunctive relief. On August 9, 2019, Plaintiff filed a motion for a preliminary injunction supported by a memorandum of law and an affidavit with exhibits. (Docs. 12–14.) On August 12, 2019, Defendant moved to dismiss Plaintiff's complaint, and filed a memorandum of law in support of its motion, and a declaration with exhibits. (Docs. 16–21.) On September 13, 2019, Plaintiff filed a memorandum of law in opposition to Defendant's motion to dismiss, as well as an affidavit. (Docs. 27–28.) Defendant opposed Plaintiff's motion for a preliminary injunction on September 17, 2019 by filing a memorandum of law in opposition, and two supporting declarations with exhibits. (Docs. 25, 30–31). On September 27, 2019, Defendant filed a reply memorandum of law in support of its motion to dismiss, and a supporting declaration. (Docs. 33–34.) Finally, also on September 27, Plaintiff filed a reply memorandum of law in support of its motion for a preliminary injunction, and two affidavits.

(Docs. 35–37.)

### III. <u>Legal Standards</u>

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citing *Steel Co. v. Citizens For A Better Environment*, 523 U.S. 83, 93–102 (1998)).[4] On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the "plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)); *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) ("When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant."). To defeat a jurisdiction-testing motion, the plaintiff's burden of proof "'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). At the pleading stage a plaintiff need only make a prima facie showing that jurisdiction exists, and that showing may be established solely by allegations. *Id.* at 84–85; *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167–68 (2d Cir. 2015) ("'In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists.'" (quoting *Licci ex rel. Licci v. Lebanese Canadian*

---

[4] Defendant appears to abandon its subject matter jurisdiction arguments in light of Plaintiff's argument in opposition. Given Plaintiff's assertion of jurisdiction under both 28 U.S.C. §§ 1331 and 1332, I conclude that the exercise of subject matter jurisdiction is appropriate here.

6

*Bank, SAL*, 732 F.3d 161, 167–68 (2d Cir. 2013))).

Courts may rely on materials outside the pleadings in considering a motion to dismiss for lack of personal jurisdiction. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). If the court considers pleadings and affidavits submitted by the parties, the plaintiff's prima facie showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *In re Terrorist Attacks on Sept. 11*, 2001, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)). "'The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.'" *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)). If the parties present conflicting affidavits, however, "all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Seetransport Wiking*, 989 F.2d at 580 (citation omitted).

IV. **Discussion**

    A. *Personal Jurisdiction*

Defendant moves to dismiss the complaint for lack of personal jurisdiction under Rule 12(b)(2). "The amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (quoting *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir.

7

1963) (en banc)). "Thus, in resolving questions of personal jurisdiction in a diversity action, a district court must conduct a two-part inquiry." *Id.* First, courts apply the forum state's long-arm statute. *See Queen Bee of Beverly Hills, LLC*, 616 F.3d at 163. Second, the court must "analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Id.* at 164. The court's Due Process Clause analysis has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry. *See id.*

"With respect to minimum contacts, [the court] must determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This inquiry distinguishes between "specific" jurisdiction and "general" jurisdiction. Specific jurisdiction exists when "a [s]tate exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984). "A court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Queen Bee of Beverly Hills, LLC*, 616 F.3d at 164 (citing *Helicopteros*, at 414–15 n. 9). In determining the strength of the contacts, the court should look to the totality of a defendant's contacts with the forum state. *Id.* (citing *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir.2005) ("No single event or contact connecting defendant to the forum state need be demonstrated; rather, the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper.")). Importantly, to establish specific jurisdiction, "[t]he relationship between the defendant and the forum 'must arise out of contacts that the defendant *himself* creates with the forum.'" *Waldman v. Palestine Liberation Org.*, 835

8

F.3d 317, 335 (2d Cir. 2016) (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). In other words, "[t]he 'minimum contacts analysis looks to the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there.'" *Id.* (citing *Walden*, 571 U.S. at 284). "And the same principles apply when intentional torts are involved." *Id.* (internal quotation mark omitted). Here, Plaintiff asserts only specific personal jurisdiction over Defendant.

With respect to the "reasonableness" inquiry, the court must assess whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice"—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case. *See Int'l Shoe Co.*, 326 U.S. at 316. Courts "must evaluate the following factors as part of this 'reasonableness' analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Queen Bee of Beverly Hills, LLC*, 616 F.3d at 164–65 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113–14 (1987). "While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* at 165 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

9

### 1. New York's Long-Arm Statute

In this case, Plaintiff asserts that personal jurisdiction is proper under New York CPLR sections 302(a)(1) and (a)(3)(ii). (*See* Pl. Opp. 2.)[5] These sections of the New York's long-arm statute state:

> § 302. Personal jurisdiction by acts of non-domiciliaries
>
> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or . . .
>
> 3. commits a tortious act without the state causing injury to person or property within the state, . . . if he (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce

N.Y. C.P.L.R. § 302.

#### a. Section 302(a)(1)

"To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether th[e] cause of action arises from such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quotations and alteration omitted). In construing section 302(a)(1)'s "transacts business" language, "'[t]he overriding criterion' necessary to establish a transaction of business is 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York.'" *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (2007) (quoting *McKee Elec. Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 382 (1967)). "Purposeful activities are those with which a defendant, through volitional acts, 'avails itself of the privilege

---

[5] "Pl. Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss. (Doc. 28.)

10

of conducting activities within the forum State, thus invoking the benefits and protections of its laws,'" *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007) (quoting *McKee*, 20 N.Y.2d at 382). Such acts may be contrasted with "random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp.*, 471 U.S. at 475 (internal quotation marks and citations omitted). "A connection that is merely coincidental is insufficient to support jurisdiction." *Best Van Lines, Inc.*, 490 F.3d at 249 (internal quotation marks omitted). Further, "[w]here a defendant's interactions with New York residents is not distinguishable from [the defendant's] interaction with those located in any other jurisdiction, the allegations are insufficient because they lack the traditional indicia of purposeful availment." *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 421 (S.D.N.Y. 2009) (internal quotation marks omitted). "While the Court must look to the 'totality of the circumstances' to determine whether this standard is met, even a single New York business transaction may be sufficient, provided the cause of action arises 'out of the subject matter of the transaction.'" *Warner Bros. Entm't Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 266 (S.D.N.Y. 2007) (quoting *Viacom Int'l, Inc. v. Melvin Simon Prods.*, 774 F. Supp. 858, 862 (S.D.N.Y. 1991); *see also Realuyo v. Abrille*, 93 F. App'x 297, 299 (2d Cir. 2004) (summary order) ("As a specific jurisdiction statute, section 302(a)(1) authorizes New York courts to exercise personal jurisdiction over a foreign defendant only if the cause of action asserted against it is one arising from the transaction of such business." (internal quotation marks omitted)); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000) ("Section 302(a)(1)] requires a strong nexus between the plaintiff's cause of action and the defendant's in state conduct.") (internal quotation marks omitted). "New York courts have held that a claim arises from a particular transaction when there is some articulable nexus between the business transacted and the cause

of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted." *Best Van Lines, Inc.*, 490 F.3d at 249 (internal quotation marks omitted).

Plaintiff fails to make a prima facie showing with respect to section 302(a)(1), because Plaintiff has not alleged the existence of a single act directed at New York out of which these claims arise. Although Plaintiff has put forth facts suggesting that Defendant has conducted limited business in New York *prior to* Defendant's termination of the parties' contract—when, as Plaintiff admits, such business was entirely permitted by the parties' agreement—Plaintiff's instant claims are forward-looking in nature and require Defendant's misuse of Plaintiff's customer information *after* the alleged improper termination of the contract, and in breach of Plaintiff's alleged rights.[6] Plaintiff has not sufficiently averred facts suggesting that Defendant has actually continued to transact business in New York in a manner giving rise to such claims. In fact, Plaintiff's only allegation regarding Defendant's business activity in New York is its statement that from December 15, 2017 until the termination of the parties' agreement in May of 2019, Defendant "entered transactions with more than 9,400 customers through [Plaintiff], 240 of whom [were] residents of New York. In some cases, these customers acquired digital products through [Plaintiff's] website. In others, [Defendant] obtained customer contact information from [Plaintiff], and directly shipped subscription-based products through the mail, which [Defendant] continued to supply to the New York customers on an on-going basis." (Choi Aff. ¶ 8.)[7] Because these allegations only involve transactions occurring prior to the termination

---

[6] I recognize that a "plaintiff must establish [personal] jurisdiction with respect to each claim asserted." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004). Here, however, because each of Plaintiff's claims stem from the same core allegation that Defendant has misused information after termination of the parties' agreement in violation of Plaintiff's rights, and because Plaintiff has not sufficiently alleged any such act of misuse, never mind such an act that took place in New York, my personal jurisdiction analysis applies equally to each of Plaintiff's claims. I note that Plaintiff itself does not attempt to distinguish its causes of action for purposes of asserting personal jurisdiction.

[7] "Choi Aff." refers to the Affidavit of Jae Choi in Opposition to Motion to Dismiss, (Doc. 27). Defendant contests these allegations and asserts that its products "were fulfilled digitally, and [Defendant] was only provided []

12

of the parties' contract, they cannot support the conclusion that Plaintiff's "cause[s] of action arise[] from [those] business transaction[s]," as required by section 302(a)(1). *Best Van Lines, Inc.*, 490 F.3d at 249 (internal quotation marks omitted); *see also Interface Biomedical Labs. Corp. v. Axiom Med., Inc.*, 600 F. Supp. 731, 737 (E.D.N.Y. 1985) (CPLR 302(a)(1) was not satisfied because all contact with New York occurred prior to the alleged misappropriation and "did not cause or further the alleged misappropriation of intellectual property rights"); *cf. Pictometry Int'l Corp. v. Air Am. Flight Ctr., LLC*, 394 F. Supp. 3d 320, 333–34 (W.D.N.Y. 2019) (concluding that personal jurisdiction was satisfied because "there were allegedly *ongoing* contacts with New York *after* the misappropriation in which the wrongfully obtained information was used" (emphasis added)).

In an attempt to allege that Defendant has ongoing business activity in New York out of which Plaintiff's claims arise, Plaintiff alleges only that Defendant "intend[s] to utilize [Plaintiff's] proprietary customer information" and that "it became apparent that the motivation for [Defendant's] actions was its intention to compete with [Plaintiff], including through unlawful utilization of [Plaintiff's] confidential and proprietary customer information." (Compl. ¶¶ 23, 25.) Plaintiff further asserts that it "believe[s] that [Defendant] has attempted to solicit [its] customers." (Choi Aff. ¶ 14.) These allegations—made in the most conclusory, generalized, and speculative fashion—are insufficient to satisfy Plaintiff's burden. First, Plaintiff merely alleges that Defendant has a general intent to use its customer information, and does not allege that Defendant is actually using or will imminently use the information. The court cannot base personal jurisdiction on such a general allegation. *See Warner Bros. Entm't*

---

customers' first and last names and email addresses" by Plaintiff. (Third Declaration of Julie Sweeney, filed September 27, 2019, (Doc. 34.) ("Sweeney Decl. III"), ¶ 1.) Defendant also states that "[p]hysical customer addresses were not provided to [Defendant] in the normal course of business." (*Id.* ¶ 2.)

13

*Inc.*, 516 F. Supp. 2d at 267 ("Plaintiffs' generalized allegation that . . . [d]efendants had continuing and ongoing business contacts with residents of the state of New York is insufficient to establish jurisdiction." (citation omitted)). Second, even if Plaintiff properly alleged Defendant's intent to use Plaintiff's confidential information, Plaintiff's allegations regarding Defendant's intent are not New York-specific, which is fatal to Plaintiff's argument. *See Royalty Network Inc.*, 638 F. Supp. 2d at 421 (allegations insufficient "[w]here a defendant's interactions with New York residents is not distinguishable from [the defendant's] interaction with those located in any other jurisdiction" (internal quotation marks omitted)). Moreover, Defendant rebuts Plaintiff's conclusory allegations by stating that it "has not directly marketed to New York," (Sweeney Decl. III ¶ 5), and "does not have a commercial presence in New York," (Sweeney Decl. ¶ 13). Accordingly, Plaintiff has failed to make the requisite showing of personal jurisdiction arising from Defendant's transactions.

The parties' March ▌ 2017 reseller agreement likewise does not create personal jurisdiction under section 302(a)(1). To allege a prima facie case of personal jurisdiction under the "contracting to supply goods" prong of Section 302(a)(1), a plaintiff must claim that "'there was a contract to ship goods to New York . . . and goods were shipped under that contract.'" *Great N. Ins. Co. v. Constab Polymer–Chemie GmbH & Co.*, 75 Fed. App'x. 824, 826 (2d Cir. 2003) (summary order) (quoting *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 37 (2d Cir. 2001)). Plaintiff alleges that the parties entered into an agreement on March ▌ 2017 to further Plaintiff's resale of Defendant's products, (Compl. ¶ 11), and that Plaintiff has approximately 250,000 customers located throughout the United States and abroad, (Compl. ¶ 7). However, Plaintiff does not allege that the reseller agreement was in fact a contract to ship goods to New York, and the agreement itself does not mention New York.

Plaintiff would be hard-pressed to make such allegations, because the reseller agreement at issue in this case was executed on March ▮ 2017 when Plaintiff's principal place of business was California, and months before Plaintiff's current CEO acquired Plaintiff and relocated the company to New York on December 15, 2017. (Choi Aff. ¶¶ 6–7.) That Plaintiff unilaterally moved its headquarters to New York, however, is of no moment, for "[t]he residence or citizenship of the plaintiff is an insufficient basis [to exercise] specific jurisdiction over the defendant[]." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 337 (2d Cir. 2016). Instead, the court must "focus on the relationship of the defendant[], the forum, and the defendant['s] suit-related conduct" to evaluate personal jurisdiction. *Id.* "From 2010 to 2019, [Defendant] did business with [Plaintiff]," but "understood [Plaintiff] to be a business located in California," "with [] personnel located . . . in California." (Sweeney Decl. ¶ 6.) In fact, Defendant "did not have any knowledge that [Plaintiff's CEO] was located in . . . New York until the [c]omplaint was filed." (Sweeney Decl. III ¶ 4). Plaintiff even admits that, as of the date it filed the complaint, it was not registered to do business in New York, and did not apply for registration with New York's Department of State until August 29, 2019.[8] (Choi Aff. ¶ 2.) Additionally, although Plaintiff has alleged possible New York customers, when asserting personal jurisdiction under the "contracting to supply goods" prong of section 302(a)(1), it is still the case that Plaintiff's "cause[s] of action must arise from [Defendant's] instate activities." *Allied Dynamics Corp. v. Kennametal, Inc.*, 965 F. Supp. 2d 276, 290 (E.D.N.Y. 2013). For the same reasons articulated above, Plaintiff has failed to demonstrate a particular shipment of goods into New York giving rise to its claims. Accordingly, Plaintiff has failed to satisfy the requirements of

---

[8] My own search of the New York Department of State's Division of Corporations Corporation and Business Entity Database does not indicate that Plaintiff's application to register to do business in New York was actually successful, and Plaintiff has not provided any such evidence.

section 302(a)(1) of New York's long-arm statute.

                                                   b. <u>Section 302(a)(3)(ii)</u>

Plaintiff's failure to allege Defendant's actual pursuit of New York business in the wake of the parties' contract termination is also fatal to its invocation of personal jurisdiction under section 302(a)(3)(ii). Section 302(a)(3)(ii) requires a Defendant's allegedly tortious activity to have "caus[ed] injury to person or property within the state." CPLR § 302(a)(3). "It is well established that this requirement is not satisfied simply because the injured plaintiff is a New York resident or domiciliary." *Doe v. Delaware State Police*, 939 F. Supp. 2d 313, 326 (S.D.N.Y. 2013). "Rather, jurisdiction must be based upon a more direct injury within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there." *Id.* (internal quotation marks omitted). "The loss of customers in New York will satisfy the local injury requirement, but plaintiffs must make a prima facie showing that such injury has been suffered." *Plastwood Corp. v. Robinson*, No. 04 CV. 3214 (BSJ), 2004 WL 1933625, at *6 (S.D.N.Y. Aug. 30, 2004). "It is not enough simply to allege that one has been injured. There must be some showing that injury has actually occurred," *id.*, or that the defendant's tortious conduct "threatens to cause harm," *Foot Locker Retail, Inc. v. SBH, Inc.*, No. 03 CIV.5050 DAB, 2005 WL 91306, at *4 (S.D.N.Y. Jan. 18, 2005). *See also Interface Biomedical Labs. Corp.*, 600 F. Supp. at 740 (CPLR § 302(a)(3) not satisfied because "Plaintiff ha[d] not specified any actual or threatened loss of customers in New York").

Plaintiff certainly alleges a belief that its customer base is in jeopardy, (Choi Aff. ¶ 14), but merely alleging a belief in a likelihood of harm is insufficient to make a prima facie showing under section 302(a)(3). The same conclusion applies to Plaintiff's conclusory and speculative allegations that Defendant "intend[s] to utilize [Plaintiff's] proprietary customer information"

16

and that "it became apparent that the motivation for [Defendant's] actions was its intention to compete with [Plaintiff] . . . ," (Compl. ¶¶ 23, 25), especially since these allegations are not New York specific and are rebutted by Defendant as outlined above. (*See* Sweeney Decl. III ¶¶ 5, 13.) The cases cited by Plaintiff corroborate this conclusion, demonstrating that more substantiated and specific allegations of injury are required to exercise personal jurisdiction under section 302(a)(3). *See, e.g.*, *Foot Locker Retail, Inc.*, 2005 WL 91306, at *5 (section 302(a)(3) satisfied where plaintiff provided evidence that defendant actually contacted its competitor in an attempt to license trademarks belonging to plaintiff); *777388 Ontario Ltd. v. Lencore Acoustics Corp.*, 142 F. Supp. 2d 309, 324 (E.D.N.Y. 2001) (injury prong satisfied by allegations that third-party defendants attempted to poach third-party plaintiff's employees and formed agreements with the employees to obtain proprietary information); *Facit, Inc. v. Krueger, Inc.*, 732 F. Supp. 1267, 1273 (S.D.N.Y. 1990) (third party defendants' corporation "completed substantial interstate sales as well as significant New York sales" causing third party plaintiff actual harm in the form of lost sales of which the court took judicial notice (citation omitted)); *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197 (1981) (exercising personal jurisdiction in action alleging "the threatened loss of important customers" where defendant had already solicited and secured an order from one of the plaintiff's major New York customers). Accordingly, Plaintiff has failed to satisfy the requirements of CPLR § 302(a)(3)(ii).

### 2. Due Process Clause

Because the constitutional test for specific personal jurisdiction also requires Plaintiff's claims to "aris[e] out of or relate[e] to the defendant's contacts with the forum," *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 & n. 8, and because "New York law has relied significantly on due process cases in developing its jurisprudence under its long-arm statute," *Best Van Lines, Inc.*, 490 F.3d at 255, I conclude, consistent with the above, that Plaintiff's

allegations are insufficient to satisfy the Due Process clause's minimum contacts test.

Additionally, I find that exercising personal jurisdiction over the Defendant is not reasonable in light of "traditional notions of fair play and substantial justice." *Best Van Lines, Inc.*, 490 F.3d at 242 (quoting *International Shoe Co.*, 326 U.S. at 316). First, "there will be some burden" imposed on Defendant if its representatives must travel from Ohio to New York to litigate. *Queen Bee of Beverly Hills, LLC*, 616 F.3d at 173. Second, although New York has a "manifest interest in providing effective means of redress for its residents," *id.* (quoting *Burger King*, 471 U.S. at 483), nothing in the record indicates that Plaintiff is indeed a New York resident registered to do business in New York. However, it is undisputed that Plaintiff is a corporation organized under the laws of California. (Compl. ¶ 5.) Third, although Plaintiff has an interest in obtaining relief in New York given Plaintiff's representation that its CEO is located in New York, (Choi Aff. ¶ 7), it is reasonable for Plaintiff to litigate out of state given Plaintiff's status as a California corporation formerly based in California. Finally, with respect to the final two factors, there are other states that have an interest in this dispute and the parties' rights— primarily Ohio and California—where other evidence is located, and witnesses reside.

    **B.**    *Preliminary Injunction Motion*

Although a prima facie showing of personal jurisdiction is all that is required to defeat a motion to dismiss under Rule 12(b)(2), "a prima facie showing of jurisdiction will not suffice where a plaintiff seeks preliminary injunctive relief." *Broker Genius, Inc. v. Seat Scouts LLC*, No. 17-Cv-8627 (SHS), 2019 WL 4054003, at *4 (S.D.N.Y. Aug. 27, 2019) (citing *Weitzman v. Stein*, 897 F.2d 653, 659 (2d Cir. 1990)). To establish personal jurisdiction in such a context, a plaintiff must "adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits." *Visual Scis.,*

*Inc. v. Integrated & Commc'ns Inc.*, 660 F.2d 56, 59 (2d Cir. 1981); *accord Weitzman*, 897 F.2d at 659; *see also Lam Yeen Leng v. Pinnacle Performance Ltd.*, 474 F. App'x 810, 813–14 (2d Cir. 2012) (summary order) ("Where a challenge to personal jurisdiction is interposed on an application for a preliminary injunction, the district court must determine that the party moving for the injunction has established 'at least a reasonable probability of ultimate success on the question of the court's in personam jurisdiction . . . .'" (quoting *Weitzman*, 897 F.2d at 659)). Given that Plaintiff faces a higher burden when demonstrating personal jurisdiction in connection with its motion for a preliminary injunction, I conclude that I do not have in personam jurisdiction to enter an injunction against Defendant.

## V. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED, and Plaintiff's motion for a preliminary injunction is DENIED.

The Clerk of Court is respectfully directed to close the open motions at Documents 12 and 16, and is further directed to close this case.

SO ORDERED.

Dated: March 11, 2020
New York, New York

Vernon S. Broderick
United States District Judge

19